FILED
2026 JUN 09 03:11 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 26-2-18694-4 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF KING

| | |
|---|---|
| MARY ANN TOLENTINO, on her own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LISA SAYS GAH INC,<br><br>Defendant. | Case No.: _____ SEA<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

Mary Ann Tolentino (`Plaintiff_), on her own behalf and on behalf of others similarly situated, on information and belief except to her own experiences and matters of public record, complains of Lisa Says Gah Inc. (`Lisa Says Gah_ or `Defendant_) as follows:

## I.    INTRODUCTION

1.    In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).

2.    Among other things, CEMA prohibits transmitting a commercial email with `false or misleading information in the subject line_ to the email address of a Washington resident._ RCW

CLASS ACTION COMPLAINT `1

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 ¿ FAX 872.863.1109
straussborrelli.com

19.190.020(1)(b).

3. Lisa Says Gah engages in the precise activity which CEMA prohibits.

4. Lisa Says Gah spams Washington consumers, including Plaintiff, with commercial emails featuring subject lines which employ various tactics to create a false sense of urgency in consumers' minds' and ultimately, from consumers' wallets.

5. This false urgency wastes consumers' time by enticing them to engage with the defendant's marketing efforts for fear of missing out. It also floods consumers' email inboxes with repeated false notifications that the time to act' i.e., purchase' is short.

6. Through their deceptive time-sensitivity, Lisa Says Gah falsely narrows the field' steering consumers away from shopping for better deals' to its own products that must be purchased now.

7. Plaintiff challenges Lisa Says Gah's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II.    JURISDICTION AND VENUE

8. The Court has jurisdiction of this case under RCW 2.08.010.

9. Venue is proper in King County under RCW 4.12.020(3) because Plaintiff's cause of action, or some part thereof, arose in King County.

10. Defendant sells its products in Washington through its website and thus subject to personal jurisdiction in this court. See, e.g., Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. 351 (2021).

CLASS ACTION COMPLAINT  ‑ 2

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 ¿ FAX 872.863.1109
straussborrelli.com

### III.    PARTIES

11.    Plaintiff Mary Ann Tolentino is a resident of King County, Washington.

12.    Defendant Lisa Says Gah Inc. is incorporated in California with its principal place of business at 2147 W Sunset Blvd Los Angeles, CA 90026.

### IV.    FACTUAL ALLEGATIONS

A.    CEMA protects Washington consumers from deceptive spam emails.

13.    The Supreme Court of Washington has made clear: `[A]ll Internet users ŭ bear the cost of deceptive spam._ State v. Heckel, 143 Wn. 2d 824, 835 (2001) (en banc).

14.    In 1998, the Legislature found that the `volume of commercial electronic mail_ was `growing,_ generating an `increasing number of consumer complaints._ Laws of 1998, ch. 149, í 1.

15.    While it's been nearly three decades since CEMA's enactment, the problems caused by unsolicited commercial email, i.e. spam email, have grown exponentially.

16.    The problems, however, are not limited to email content. Subject lines of emails are framed to attract consumers˘ attention away from the spam barrage to a message that entices consumers to click and, ultimately, purchase.

17.    In 2003, the United States Congress found that `[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages˘subject lines in order to induce the recipients to view the messages._ 15 U.S.C. í 7701(a)(8).

18.    In 2012, one study estimated that Americans bear `costs of almost $20 billion annually_ due to unsolicited commercial email. Justin M. Rao & David H. Reiley, The Economics of Spam, 26 J. of Econ. Perspectives 87, 88 (2012).

19.    Even when bulk commercial email marketers are operating under color of consumer

CLASS ACTION COMPLAINT ˉ3

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 ¿ FAX 872.863.1109
straussborrelli.com

consent, the reality is that `[m]ost privacy consent_´ especially under the `notice-and-choice_ approach predominant in the United States´ `is a fiction._ Daniel J. Solove, Murky Consent: An Approach to the Fictions of Consent in Privacy Law, 104 Boston Univ. L. Rev. 593, 596 (2024).

20. Consumers therefore routinely `consent_ to receive flurries of commercial emails which they did not meaningfully request and in which they have no genuine interest.

21. This includes emails sent to consumers from businesses with which they have no prior relationship´ by virtue of commercial data brokers and commercial data sharing agreements.

22. Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. `Nowadays, you need an email address for everything from opening a bank account to getting your dog´s nails trimmed, and ŭ [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, :we miss you˜messages, and holiday promotions throughout the year. It´s too much._ Kaitlyn Wells, Email Unsubscribe Services Don´t Really Work, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

23. The Legislature presciently intended CEMA to `provide some immediate relief_ for these problems by prohibiting, among other things, commercial emails that `contain untrue or misleading information in the subject line._ Laws of 1998, ch. 149, í 1.

24. CEMA thereby protects Washington consumers against the `harms resulting from deceptive commercial e-mails,_ which `resemble the type of harms remedied by nuisance or fraud actions._ Harbers v. Eddie Bauer, LLC, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

25. CEMA´s `truthfulness requirements_ increase the costs of sending deceptive commercial emails and thereby reduce their volume. Heckel, 143 Wn. 2d at 836.

26. CEMA´s `truthfulness requirements_ thereby advance the statute´s aim of

CLASS ACTION COMPLAINT ˜ 4

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 ¿ FAX 872.863.1109
straussborrelli.com

protecting consumers `from the problems associated with commercial bulk e-mail_ while facilitating commerce `by eliminating fraud and deception._ Id.

27.   CEMA `mean[s] exactly what it says_: in `broad_ but `patently clear_ language, CEMA unambiguously prohibits `sending Washington residents commercial e-mails that contain any false or misleading information in the subject lines of such e-mails._ Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC, 567 P.3d 38, 44, 46¯47 (Wash. 2025).

28.   CEMA`s protections do not depend on whether an email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. See Harbers, 415 F. Supp. 3d at 1011.

29.   The statute`s only concern is to suppress false or misleading information in the subject line of commercial emails. See Brown, 567 P.3d at 44¯45.

B.     The subject lines of Lisa Says Gah`s marketing emails make false time scarcity claims.

30.   One common way online marketers `manipulate consumer choice by inducing false beliefs_ is to create a false sense of urgency or to falsely claim that consumers `time to act is scarce. Fed. Trade Comm`n, Bringing Dark Patterns to Light 4 (2022), https://perma.cc/847M-EY69/; see also U.K. Competition & Mkts. Auth., Online Choice Architecture´ How Digital Design Can Harm Competition and Consumers 26 (2022), https://perma.cc/V848-7TVV/.

31.   The FTC has identified the `False Limited Time Message_ as one example of false time scarcity claims, in which the marketer creates `pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon´ but without a deadline or with a meaningless deadline that just resets when reached._ Bringing Dark Patterns to Light, supra para. 30, at 22.

CLASS ACTION COMPLAINT ¯ 5

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 ¿ FAX 872.863.1109
straussborrelli.com

32.    `False or misleading scarcity claims can change the behavior of consumers._ Online Choice Architecture, supra para. 30, at 27.

33.    Representations about the timing and duration of sales, discounts, and other special offers are fundamentally representations about prices, and such representations matter to ordinary consumers. See, e.g., Huiliang Zhao et al., Impact of Pricing and Product Information on Consumer Buying Behavior with Customer Satisfaction in a Mediating Role, 12 Frontiers in Psychology 720151 (2021), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/.

34.    False scarcity claims are psychologically effective. As `considerable evidence_ suggests, `consumers react to scarcity and divert their attention to information where they might miss opportunities._ Online Choice Architecture, supra para. 30, at 26.

35.    Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by `induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit._ Id.

36.    Under time pressure, `consumers might take up an offer to minimize the uncertainty of passing it up._ Id.

37.    False time scarcity claims thus harm consumers by manipulatively distorting their decision-making to their detriment´ and the seller's benefit.

38.    Indeed, one 2019 study found that `customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited._ Id. at 27.

39.    False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, `meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information._ Id.

CLASS ACTION COMPLAINT ´ 6

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 ¿ FAX 872.863.1109
straussborrelli.com

40.    These false time scarcity claims are a staple of Lisa Says Gah's marketing scheme to compel consumers to purchase its products.

41.    Lisa Says Gah is for-profit company that sells clothing, shoes, and other consumer goods. It sells its products directly through its website, www.lisasaysgah.com, and through its mobile application.

42.    To advertise its products and encourage purchases, Lisa Says Gah routinely sends spam emails to consumers, including consumers in Washington. These emails are part of a calculated marketing strategy that Lisa Says Gah orchestrates in advance to maximize sales by distorting factual information about the duration and availability of its promotions.

43.    Unfortunately for those recipients, Lisa Says Gah regularly titles its emails with urgent subject headings that do not reflect the true availability of the advertised deal. This strategy is demonstrated in the examples discussed below.

44.    Lisa Says Gah has tailored its approach to fit a number of offers, including promotion extensions. In these examples, Lisa Says Gah sends consumers marketing emails to advertise an offer, promotion, or sale. Then, it uses the subject lines of follow-up emails to present the promotional pricing as a scarce or time-limited opportunity. This strategy commands consumers' attention and pressures them to purchase Lisa Says Gah's products. Finally, once the originally advertised `deadline_ has passed, Lisa Says Gah knowingly extends the same promotion to a new end date.

45.    This misleading marketing strategy allows Lisa Says Gah to maximize sales during both the initial promotion, as well as the subsequent extension. While Lisa Says Gah may present these extensions as though they are a favor or unexpected blessing to consumers, they are anything but. By deploying false time pressure with surprise extensions ´ which are only disclosed once the

CLASS ACTION COMPLAINT ¨ 7

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 ¿ FAX 872.863.1109
straussborrelli.com

original promotion has ended" Lisa Says Gah compels consumers to purchase quickly while withholding terms that consumers need so they can make informed buying decisions.

46. As an example of Lisa Says Gah's marketing scheme, on December 23, 2024, Lisa Says Gah sent consumers a mass email with the subject line, `▓ Ending Soon: Extra 25% Off Sale_.

47. The subject line of the December 23, 2024, email was false or misleading as the as the 25% discount would not be `ending soon,_ as Lisa Says Gah knew and intended when it or its contractors crafted this marketing campaign.

48. On December 26, 2024, Lisa Says Gah sent an email to consumers with the subject line, `☐ ▓ New Year Sale: 25% Off_. Indeed, the new offer was superior to the previous offer, in that it offered the same discount on all products sitewide, whereas the previous offer had been limited to sale items only.

49. As another example of Lisa Says Gah's marketing scheme, on May 26, 2025, Lisa Says Gah sent consumers a mass email with the subject line, `▓ LAST CHANCE FOR 25% OFF_.

50. The subject line of the May 26, 2025, email was false or misleading as it was not the `last chance_ for consumers to get a 25% discount, instead the sale was extended, as Lisa Says Gah knew and intended when it or its contractors crafted this marketing campaign.

51. On May 27, 2025, Lisa Says Gah sent an email to consumers with the subject line, `25% OFF extended, one more day!,_ extending the same sale that was previously advertised to end the day before.

52. As another example of Lisa Says Gah's marketing scheme, on September 1, 2025, Lisa Says Gah sent consumers a mass email with the subject line, `⌗⌗LAST CHANCE: 40-70%

CLASS ACTION COMPLAINT ˜ 8

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 ; FAX 872.863.1109
straussborrelli.com

OFF_.

53. The subject line of the on September 1, 2025, email was false or misleading as it was not the `last chance_ for consumers to get a 40-70% discount, instead the sale was extended, as Lisa Says Gah knew and intended when it or its contractors crafted this marketing campaign.

54. On September 2, 2025, Lisa Says Gah sent an email to consumers with the subject line, `Sale EXTENDED just for you! 40-70% OFF,_ extending the same sale that was previously advertised as ending the day before.

55. As the subject lines of these examples of Lisa Says Gah's marketing tactics demonstrate, Lisa Says Gah is engaged in a scheme where it pressures consumers to purchase its products by falsely representing the limited availability of its offers.

56. This complicated and seemingly perpetual series of promotions, threatened terminations, and renewals of the same offer is a strong indication that these promotions do not reflect any underlying business realities of supply or demand. To the contrary, they are just marketing tricks, components of preplanned, preconceived marketing strategies´ all at consumers~ expense.

C. Lisa Says Gah knows when it sends emails to Washington residents.

57. A sophisticated commercial enterprise, like Lisa Says Gah, which is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are peculiarly within its knowledge.

58. First, the sheer volume of email marketing that Lisa Says Gah engages in puts it on notice that Washington residents would receive its emails.

59. Second, Lisa Says Gah may obtain location information tied to email addresses

CLASS ACTION COMPLAINT ~ 9

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 ¿ FAX 872.863.1109
straussborrelli.com

when consumers purchase Lisa Says Gah's products, or otherwise self-report such information to Lisa Says Gah.

60.    Third, Lisa Says Gah may obtain location information tied to email addresses by tracking the IP addresses of devices used to open Lisa Says Gah's emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

61.    Fourth, Lisa Says Gah may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

62.    Fifth, Lisa Says Gah may obtain location information tied to email addresses by using `identity resolution_ services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

63.    Sixth, Lisa Says Gah may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. See RCW 19.190.020(2).

64.    It is thus highly probable that a seller of Defendant's size and sophistication employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

D.    Lisa Says Gah violated Plaintiff's right under CEMA to be free from deceptive commercial emails.

65.    Lisa Says Gah has spammed Plaintiff Tolentino, a Washington citizen, with commercial emails whose subject lines contain false or misleading statements in violation of her

CLASS ACTION COMPLAINT - 10

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 ; FAX 872.863.1109
straussborrelli.com

right to be free from such annoyance and harassment under CEMA.

66.     Plaintiff Tolentino received, for example, the following emails from Lisa Says Gah, each of which is misleading for the reasons detailed above, at a personal email address:

67.     ⸢⸸LAST CHANCE: 40-70% OFF_ on September 1, 2025;

68.     ⸢▦ LAST CHANCE FOR 25% OFF_ on May 26, 2025; and

69.     ⸢▦ Ending Soon: Extra 25% Off Sale_ on December 23, 2024.

70.     The subject lines of these emails are false or misleading in violation of CEMA, as discussed in detail, supra.

71.     The subject lines contained false statements of fact as to the ⸢duration or availability of a promotion._ Brown, 567 P.3d at 47.

## V.     CLASS ALLEGATIONS

72.     Plaintiff brings this action under Civil Rule 23 on behalf of the following putative class (⸢Class_):

> All Washington residents who, during the Class Period, received a commercial email sent by Defendant, on behalf of Defendant, or with Defendant's assistance, that contained messaging in the email subject line which misrepresented the facts of a sale, deal, or promotion.

73.     Excluded from this definition of the Class are Defendant's officers, directors, and employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; undersigned counsel for Plaintiff; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

74.     The Class Period extends from the date four years before this Class Action Complaint is filed to the date a class certification order is entered in this action.

75.     Plaintiff reserves the right to amend the Class definition as discovery reveals

CLASS ACTION COMPLAINT ˉ 11

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 ; FAX 872.863.1109
straussborrelli.com

additional emails containing false or misleading information in the subject line that Defendant sent or caused to be sent during the Class Period to email addresses held by Washington residents.

76. The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

77. There are questions of law or fact common to the class, including without limitation whether Defendant sent commercial emails containing false or misleading information in the subject line; whether Defendant sent such emails to email addresses it knew or had to reason to know were held by Washington residents; whether Defendant's conduct violated CEMA; whether Defendant's violation of CEMA constituted a per se violation of the Consumer Protection Act, RCW 19.86.020 (CPA); and whether Defendant should be enjoined from such conduct.

78. Plaintiff's claims are typical of the Class's because, among other reasons, Plaintiff and Class members share the same statutory rights under CEMA and the CPA, which Defendant violated in the same way by the uniform false or misleading marketing messages it sent to all putative members.

79. Plaintiff will fairly and adequately protect the Class's interests because, among other reasons, Plaintiff shares the Class's interest in avoiding unlawful false or misleading marketing; has no interest adverse to the Class; and has retained competent counsel extensively experienced in consumer protection and class action litigation.

80. Defendant has acted on grounds generally applicable to the Class, in that, among other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiff and the Class, which violate CEMA and the CPA in the same way, and from which it may be enjoined as to Plaintiff and all Class members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

CLASS ACTION COMPLAINT - 12

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 ; FAX 872.863.1109
straussborrelli.com

81. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendant has violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class member and that Class member's resulting damages.

82. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action as a class presents no special difficulties.

## VI.    CLAIMS TO RELIEF

### First Claim to Relief

### Violation of the Commercial Electronic Mail Act, RCW 19.190.020

83. Plaintiff incorporates and realleges paragraphs 1–82 above.

84. CEMA provides that `[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message ǔ to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that ǔ [c]ontains false or misleading information in the subject line. RCW 19.190.020(1)(b).

85. Defendant is a `person_ within the meaning of CEMA. RCW 19.190.010(11).

86. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of `commercial electronic mail messages_ within the meaning of CEMA. RCW 19.190.010(2).

87. Defendant initiated the transmission, conspired with another to initiate the

CLASS ACTION COMPLAINT – 13

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 ; FAX 872.863.1109
straussborrelli.com

transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents, including because Defendant knew that Plaintiff and putative members were Washington residents through `information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address_. RCW 19.190.020(b)(2).

88.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

89.    For Defendant's violation of CEMA, Plaintiff is entitled to all available relief, including an injunction against further violations.

## Second Claim to Relief

### Violation of the Consumer Protection Act, RCW 19.86.020

90.    Plaintiff incorporates and realleges paragraphs 1-82 above.

91.    The CPA provides that `[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful._ RCW 19.86.020.

92.    A violation of CEMA is a per se violation of the CPA. RCW 19.190.030.

93.    A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. Wright v. Lyft, 189 Wn. 2d 718 (2017).

94.    CEMA provides that `[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message ŭ  to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that ŭ  [c]ontains false or misleading information in the subject line._

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 ¿ FAX 872.863.1109
straussborrelli.com

RCW 19.190.020(1)(b).

95. Defendant is a `person_ within the meaning of CEMA. RCW 19.190.010(11).

96. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of `commercial electronic mail messages_ within the meaning of CEMA. RCW 19.190.010(2).

97. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents.

98. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

99. For Defendant's violation of the CPA, Plaintiff and putative members are entitled to an injunction against further violations; the greater of Plaintiff's actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

## VII. JURY DEMAND

100. Plaintiff will demand a jury trial by separate document in accordance with Local Civil Rule 38(a).

## VIII. PRAYER FOR RELIEF

Plaintiff asks that the Court:

A. Certify the proposed Class, appoint Plaintiff as Class representative, and appoint undersigned counsel as Class counsel;

B. Enter a judgment in Plaintiff's and the Class's favor permanently enjoining Defendant from the unlawful conduct alleged;

CLASS ACTION COMPLAINT - 15

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 ; FAX 872.863.1109
straussborrelli.com

C.    Enter a judgment in Plaintiff's and the Class's favor, awarding actual or liquidated damages, trebled, according to proof;

D.    Award Plaintiff costs of suit, including reasonable attorneys' fees; and

E.    Order such further relief the Court finds appropriate.

Date: June 9, 2026

Respectfully submitted,

/s/ Samuel J. Strauss

Samuel J. Strauss, WSBA No. #46971
Raina C. Borrelli*
STRAUSS BORRELLI PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Counsel for Plaintiff and the Putative Class

CLASS ACTION COMPLAINT - 16

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 ; FAX 872.863.1109
straussborrelli.com